IN THE MATTER OF THE PETITION OF THE ATTORNEY-GENERAL PRAYING THAT "AN ACT TO AMEND AN ACT ENTITLED 'AN ACT CONCERNING PUBLIC UTILITIES; TO CREATE A BOARD OF PUBLIC UTILITY COMMISSIONERS, AND TO PRESCRIBE ITS DUTIES AND POWERS,' APPROVED APRIL TWENTY-FIRST, ONE THOUSAND NINE HUNDRED AND ELEVEN, BY ADDING A SECTION CONCERNING THE SAFE-GUARDING AND REMOVAL OF RAILROAD CROSS-INGS. AND THE PAYMENT OF THE COSTS THEREOF," AND PUBLISHED AS CHAPTER 412 IN THE SESSION LAWS OF THE PRESENT YEAR, BE DECREED TO BE NULL AND VOID.

Argued June 13, 1912—Decided September 27, 1912.

1. The act of March 3d, 1873, entitled "An act providing for de-creeing and making known that certain laws and joint resolu-tions have become inoperative and void" is not repugnant to the constitution for failure to express in its title the object sought to be accomplished by its enactment, and set out in the body of the statute.

2. It is within the province of the legislature to create a method of judicial procedure in which the sole question to be presented for decision is whether or not a given statute was enacted in con-formity to constitutional requirements, and providing for the effect which shall be given to the judicial determination of that question.

3. The act of March 3d, 1873, is applicable to all statutes which have been delivered either by the executive or the legislative de-partment of the government to the secretary of state, to be filed in his office, and which have thereby, apparently, become a part of the body of the law of the state.

4. Article 5, paragraph 7, of the constitution declares that "Every bill which shall have passed both houses shall be presented to the governor; if he approves he shall sign it, but if not he shall return it with his objections to the house in which it shall have originated, * * *. If any bill shall not be returned by the governor within five days (Sunday excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature by their adjournment prevent its return, in which case it shall not be a law." *Held,* that, by force of this constitutional provision, the adjournment of the house in which a bill originates, after such bill has been pre-sented to the governor subsequent to its final passage, if it con-

tinues for more than five days after the bill has been so presented, prevents the return of the bill by the executive to the house of origin within that period; and that the effect of such prevention is to absolutely destroy the validity of the bill.

On petition of the attorney-general.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN and KALISCH.

For the petition, *Edmund Wilson*, attorney-general.

*Contra, Carlton B. Pierce* and *Edward F. Merrey.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.  The present proceeding is instituted by the attorney-general upon the instruction of his excellency the governor of the state; its purpose being to obtain from this court a judicial declaration that an act of the legislature entitled "An act to amend an act entitled 'An act concerning public utilities; to create a board of public utility commissioners, and to prescribe its duties and powers,' approved April twenty-first, one thousand nine hundred and eleven, by adding a section concerning the safeguarding and removal of railroad crossings, and the payment of the costs thereof," which passed the senate and house of assembly during the legislative session of the present year, but which did not receive the approval of the governor, is inoperative, null and void.

The application is made under the authority of an act of the legislature passed in 1873, and entitled "An act providing for decreeing and making known that certain laws and joint resolutions have become inoperative and void." 4 *Comp. Stat., p.* 4978. The pertinent provisions of the statute, so far as it relates to the matter in hand, are contained in sections 1 and 2, which read as follows:

"Section 1. That if, at any time within one year after any law or joint resolution shall have been filed by the secretary of state, in pursuance of the eighth section of the act entitled 'An act relative to the office of secretary of state and register of the prerogative court,' approved April seventeenth, one thousand eight hundred and forty-six, or in pursuance of the supplement to said act, approved March nineteenth, one thousand eight hundred and fifty-one, the governor or the person administering the government, shall have reason to believe that any such law or joint resolution was not duly passed by both houses of the legislature, or duly approved as required by the constitution of this state, he may, in his discretion, direct the attorney-general to present a petition to the supreme court of this state, setting forth the facts and circumstances, and praying that the said law or joint resolution may be decreed to be null and void; and it shall then be the duty of the said attorney-general to prepare, sign and present such petition and prosecute the same before the said court."

"Section 2. That when such petition has been presented, the said court shall have jurisdiction and power to proceed in a summary way, and inquire into the facts and circumstances alleged, and for that purpose to order the said petition to be filed by the clerk of said court, and witnesses to be subpœnaed, sworn or affirmed, and their depositions taken according to the rules of said court regulating the taking of affidavits, and to appoint a time for the hearing of the said petition, and to order such notice or notices to be given of the taking of said affidavits and of the hearing of the said petition by publication in newspapers, or otherwise, as may in the discretion of the court be deemed reasonable and just; and after a full hearing and consideration of the facts and circumstances proved, the said court may dismiss the said petition, or, if satisfied that the law or joint resolution mentioned therein was not duly and constitutionally passed by both houses of the legislature or duly approved, shall have jurisdiction and power to decree the same or any part thereof, to be null and void; *provided,* that the final hearing of said petition shall take place

before the chief justice and at least three of the associate jus-
tices of said court, and not otherwise, and no decree annulling
any law or joint resolution shall be made without the concur-
rence of at least three of the justices of said court."

At the inception of the consideration of this petition we are
met by the contention of counsel opposing it that the act of
1873, so far as the provisions of the sections quoted are con-
cerned, is unconstitutional, for the reason that the object ap-
pearing in those sections is not expressed in the title of the
act.   The argument is that the scope of the act, as expressed
in the title, is limited to the decreeing and making known that
laws and joint resolutions which, at the time of their adoption,
were operative and valid, have subsequently become inopera-
tive and void; that is to say, that the words "have become
inoperative and void" can only have effect upon matters which
were originally neither the one or the other.   We think this
construction sought to be put upon the title is too narrow.
An act of the legislature, duly passed by both houses and ap-
proved by the governor, is presumably a valid statute; and
even though violative of some constitutional provision, it is
not therefore null and void *ab initio*.   As was said by Chief
Justice Butler in *State* v. *Carroll, 38 Conn.* 449 : "Every law
of the legislature, however repugnant to the constitution, has
not only the appearance and semblance of authority but the
force of law.   It cannot be questioned at the bar of private
judgment, and, if thought unconstitutional, resisted, but must
be received and obeyed as, to all intents and purposes, law,
until questioned and set aside by the courts.   This principle is
essential to the very existence of order in society."   The
soundness of this doctrine is not in doubt in this state.   It was
approved and enforced by our Court of Errors and Appeals in
*Lang* v. *Bayonne, 45 Vroom* 455.   When it is remembered,
as was pointed out in the case last cited, that the judicial
function of passing upon the validity of statutes is confined
within a very narrow scope—that (unless the functions of the
courts in that regard have been extended by legislative au-
thority) only such statutes as affect the rights of parties to

judicial proceedings are subject to the scrutiny of the courts, and that except to the extent indicated the judicial branch of the government has no inherent power to declare or make known that laws appearing upon the statute book infringe constitutional provisions, and are, consequently, inoperative and unenforceable against the citizen—the title of the act of 1873 would seem fairly to indicate that the purpose of the legislature was to provide a method outside of litigations *inter partes* by which it might be judicially declared that statutes which are repugnant to the constitution, but which, nevertheless, have the force of law, so far as the obligation of the citizen to receive and obey them is concerned, are, after such declaration by the court, no longer to be recognized and submitted to as a part of the law of the land. Certainly, it is not clear that the title of this act infringes upon the constitutional provision appealed to; and to doubt is to sustain the statute, for no court will declare an act of the legislature to be void if its unconstitutionality is in anywise doubtful. *Attorney-General* v. *McGuinness*, 49 *Id.* 347, 371, and cases cited.

It is not suggested by counsel that the act of 1873 vests the Supreme Court with a function which is beyond the power of the legislature to confer, nor have we any doubt upon that matter. In the case of *Pangborn* v. *Young*, 3 *Vroom* 32, it was held by this court that it was the duty of the court whenever the question of the existence of a statute came judicially before it to inform itself with regard thereto; and that to declare a statute absolutely void which wanted the approval either of the assembly or the senate or that of the governor was an exercise of its clearly legitimate power. The soundness of this judicial declaration is, we think, beyond question. It is true that, ordinarily, the court is required to exercise this function only in cases where the question arises in litigations *inter partes;* but the question is, nevertheless, always a judicial one, and we see no reason for concluding that it is beyond the power of the legislature to create a method of judicial procedure in which the sole and only question to be presented for decision is whether or not a given statute was enacted in

conformity to constitutional requirements, and providing for the effect which shall be given to the judicial determination of that question. In no other way can the people of the state be informed whether a given law which appears upon the statute book is one which they are obligated to obey.

The act which is made the subject of attack by the attorney-general, having been passed by both houses of the legislature, was sent to the governor for his approval on the 29th day of March, 1912. On that day the house of assembly, which was the house in which the bill originated, adjourned to meet on the 10th day of April then next. On the 11th day of April, the governor returned the bill to the house of assembly with his veto of the same. On the 16th of April that house passed the bill over his veto, and remitted it to the senate. This latter body proceeded to reconsider the bill, but declined to pass it over the governor's veto, and returned it to the house of assembly with a notification of its action. Having received the bill the house of assembly, on the 16th of April, directed it to be filed by the secretary of state, and this was done. These facts appear from an inspection of endorsements upon the bill itself, signed by the presiding officers of the two houses of the legislature, and from a formal resolution of the house of assembly, a duly attested copy of which was delivered to the secretary of state with the bill itself and filed therewith.

It is argued by counsel opposing the petition that the first section of the act of 1873 applies only to laws filed by the secretary of state pursuant to the two statutes specified in the first section thereof, namely, the act of 1846 and its supplement of 1851, and that the act now under consideration was not filed by the officer named in pursuance of either one of the statutes referred to. The act of 1846 provides that the governor, in case he shall approve any bill or joint resolution, shall sign and deliver the same to the secretary of state, to be filed in his office. The supplement of 1851 contains two provisions—first, that in case any bill shall pass both houses of the legislature and be presented to the governor, and the

same shall not be returned to the house in which it originated within the time limited by the constitution, whereby the same has become a law in like manner as if the governor had signed the same, it shall be the duty of the governor to endorse thereon and sign a certificate of the true time the same was presented to him, and deliver the same to the secretary of state, who shall endorse thereon and sign a certificate of the time it was delivered to him, and file the same in his office. The second provision of the supplement is that if any bill which shall have passed both houses and been presented to the governor and returned by him with his objections to the house in which it originated, but which, nevertheless, afterward shall become a law in the manner prescribed by the constitution, it shall be the duty of the presiding officer of the house in which such bill originated to deliver the same to the secretary of state who shall file the same. The pith of counsels' contention is that the act of 1873 only applies to laws or joint resolutions filed by the secretary of state upon delivery to him by the governor when the governor has approved of the bill, or permitted it to become a law without his approval, or filed by the presiding officer of the house in which the bill originated when it has been passed by the legislature over the veto of the governor; and that the facts which are recited show that in the present case the bill did not come into the possession of the secretary of state in any one of the ways mentioned in these statutes—the argument being that, consequently, the proceeding authorized by the statute of 1873 is not applicable to the present situation.

It is to be borne in mind that the constitution makes no provision for the preservation of the statutes of the state; that was left to the legislature for its action, and that body provided for it by the act of 1846, and the supplement thereto of 1851. The primary purpose of these statutes was the permanent safeguarding of the written law of the state. The act of 1846 requires the secretary of state to safely keep the statute laws in his office, and not suffer them to be taken or removed therefrom on any pretence whatsoever. The supple-

ment of 1851 contains practically the same requirements. These requirements are mandatory; but the provision that in the variant conditions set out in the statute a passed bill which has become a law shall be delivered to the secretary of state by a duly specified officer is, we think, merely directory; for, as we have said, the fundamental purpose of these acts is the preservation of the statutes of the state, and the duty of the secretary of state is clear with relation to such duly enacted laws, without regard to the person from whose hand he receives a particular statute; and that duty is to file and keep safe in his office every statute of the state which has apparently become a law thereof. And we consider that this duty is imposed upon him by the act of 1846 and the supplement of 1851, whether a statute which has been duly enacted comes to him by the hand of the governor, or by the hand of the presiding officer of the house of its origin, or by the hand of an intermediary. We conclude, therefore, that the act now under consideration is within the scope of section 1 of the statute of 1873.

This brings us to the consideration of the fundamental question presented by the petition of the attorney-general; and that is whether the amendment to the public utilities statute is a valid enactment, or whether it is inoperative and void.

Article 5, paragraph 7 of our constitution declares that "every bill which shall have passed both houses shall be presented to the governor; if he approves, he shall sign it, but if not, he shall return it, with his objections, to the house in which it shall have originated, who shall enter the objections at large on their journal and proceed to reconsider it; if, after such reconsideration, a majority of the whole number of that house shall agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved of by a majority of the whole number of that house, it shall become a law; but in neither house shall the vote be taken on the same day on which the bill shall be returned to it; * * *. If any bill shall not be returned by the governor within five days

(Sunday excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature by their adjournment prevent its return, in which case it shall not be a law." As has already been stated, the house of assembly, after transmitting this bill to the governor on the 29th of March, adjourned for a period of twelve days, and were not in session again until the expiration of that period. It was not possible, therefore, for the governor to return it to that house within five days (Sunday excepted) after it was presented to him, unless those five days do not constitute a part of the period of adjournment. That they do form a part of such period we think is manifested by the constitutional provision itself, for the only time that is excepted by that instrument from the five days is Sunday, and the provision itself not only contemplates, but provides, the effect of an adjournment by the legislature for a period sufficiently long to prevent the governor returning a bill within the constitutional time. The declaration of the constitution is that a bill not returned by the governor to the house of its origin within five days shall be a law, unless the legislature by their adjournment prevent its return, and that can only mean prevent its return within the five days. It is suggested, in opposition to this conclusion, that the governor might at any time within the five days, and during the period of adjournment of the legislature, comply with the constitutional mandate by delivering the bill to the secretary of state, or to some officer of the house of origin who, in turn, would deliver it to that house upon its reassembling. But such a contention can be successfully maintained only by disregarding the express language of the constitutional provision, which is that the governor "shall return it with his objections to *the house* in which it shall have originated." What is meant by the use of the words "the house," in this connection, seems to us to be made manifest by the provision of article 4, section 4, paragraph 5 of the constitution, which declares that "neither house during the session of the legislature shall, without the consent of the other, adjourn for more than three days," and so forth. Under the constitutional

scheme the legislature consists of two houses—that is, two legislative bodies. The several members of these bodies do not constitute the respective houses of the legislature except while they are officially in session, and, consequently, there could be no return of a bill "to *the house*" by delivering it to a state officer, or even to one of its own officers. It must be returned to the house of origin while that body is sitting, and if it is not put in the possession of that house by the governor, while duly assembled, within five days after he has received it, the constitutional provision is not complied with.

It is further argued that the words "unless the legislature by·their adjournment prevent its return" mean an adjournment *sine die,* or final adjournment. But these words do not appear in the constitution. The manifest purpose of the provision is to prevent the legislature, by an adjournment of more than five days, from putting it out of the power of the governor within that period to take advantage of his constitutional right—to fulfill the constitutional duty imposed upon him; and we consider the purpose manifest, notwithstanding that the language used in the constitution is "unless the legislature," and so forth, instead of "unless the house of origin," and so forth, for, as it is the adjournment of the house of origin alone,·and not of both branches of the legislature, which prevents executive action, the necessary inference is that the words "the legislature" are used in this connection as synonymous with "the house of origin."

We conclude, therefore, that by force of the constitutional provision under consideration, the adjournment of the house in which a bill originates, after such bill has been presented to the governor, subsequent to final passage, for his approval or disapproval. if it continues for more than five days after the bill shall have been presented to the governor, prevents the return of the bill by the executive to the house of origin within that period, and that the effect of such prevention is to absolutely destroy the validity of the bill; for the concluding portion of the constitutional provision recited declares that when the legislature by their adjournment have prevented the return of such bill by the governor within the

five days it shall not be a law. This being so, not only is the governor under no obligation when the house of origin reconvenes after the five-day limit to return the bill to that body with his objections, but should he do so, his action is entirely nugatory, for no matter what course that house, or the other house of the legislature, might thereafter take upon that bill, vitality could not be restored to it. Their power to make it a law has ceased.

Our conclusion, therefore, is, that the attorney-general is entitled to the decree prayed for.