## OPINION OF THE JUSTICES OF THE SUPREME COURT IN RESPONSE TO A QUESTION PROPOUNDED BY THE GOVERNOR OF DELAWARE

*(November* 17, 1961.)

To His Excellency Elbert N. Carvel, Governor of Delaware:

Reference is made to your letter of September 19, 1961, addressed to the Chief Justice, requesting the opinions of the members of the Supreme Court upon three questions involving the construction of the provisions of two articles of the Constitution of the State of Delaware.

This opinion will deal with the first of these questions. It concerns the construction of Article III, Section 18, of the Constitution, *Del. C. Ann.*, which reads in part as follows:

"If any bill shall not be returned by the Governor within ten days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, *unless the General Assembly shall, by adjournment, prevent its return,* in which case it shall not become a law without the approval of the Governor. No bill shall become a law after the final adjournment of the General Assembly, unless approved by the Governor within thirty days after such adjournment." [Emphasis supplied.]

Your question is as follows:

The first question raised is whether, before the final adjournment of the General Assembly, a bill not approved by the Governor and not returned to the General Assembly without the approval of the Governor on the 10th day after its delivery to the Governor, due to the General Assembly not being in session, becomes law or is 'pocket vetoed'."

The facts out of which your question arises are set forth in your subsequent letter to the Chief Justice, dated October 10, 1961. Summarized, they are as follows:

On certain days in April, May, June and September in the present year certain bills, seven in number, were duly passed by both houses of the General Assembly and from time to time were duly delivered to the Governor, as required by the Constitution. The tenth calendar day after each delivery, Sundays excepted, fell upon a day on which both houses of

the General Assembly were in recess. Four of these recesses, or adjournments (it is immaterial which term is used), were for periods from 3 to 18 days. One, the latest adjournment, was taken on September 22, subject to reconvening at the call of the presiding officers. As of the date of your last letter the General Assembly had not reconvened.

A table setting forth these facts is annexed to your letter of October 10, and a copy thereof is annexed to this opinion.

The controlling constitutional provision is set forth above. The answer to your question obviously depends upon the meaning of the italicized phrase in Section 18 of Article III, which embodies the provisions for the "pocket veto".

Provisions similar to those above quoted are found in the federal constitution and in the constitutions of many of our sister states.

It is elementary that the effect of such provisions is to grant to the Executive the right to share in the exercise of the legislative power, and that the legislature can do nothing to curtail this right. The Governor is entitled to the full period of ten days, Sundays excepted, to determine whether to approve or disapprove the bill. Hence if the General Assembly by adjournment "prevents" the return, the bill, if the Governor wishes, may be "pocket vetoed". Of course, when the Constitution speaks of an adjournment by "the General Assembly", it necessarily means an adjournment of the originating house.

But does a temporary adjournment or recess have the effect of "preventing" a return? The answer to this question obviously depends upon whether the return must be made to the house *in session*.

Upon this question differing views have been expressed. On the one hand the majority of the state decisions that have considered the point hold that a temporary adjournment does not prevent a return because the Governor's message may be

delivered to officers or agents of the appropriate house of the legislature. See the following:

*State ex rel. Sullivan v. Dammann* (221 *Wis.* 551), 267 *N. W.* 433, 436; "the settled practice for at least twenty-five years seems clearly to have been to return a bill to the clerk of the House in which it originated."

*Wood v. State Administrative Board*, 255 *Mich.* 220, 238 *N. W.* 16, 19; "return may be made to the proper officer".

*State ex rel. Putnam v. Holm* (172 *Minn.* 162), 215 *N. W.* 200, 203; return may be made to "the presiding officer, secretary (or clerk) and members of either house" or to any one of them.

*Opinion of Justices*, 45 *N. H.* 607; return may be made "to the speaker, or to the clerk, or some other proper official."

*Johnson City v. Tennessee, etc., Elec. Co.* (133 *Tenn.* 632), 182 *S. W.* 587; return may be made to Committee on Enrolled Bills, or to any member, or to clerk.

*Harpending v. Haight*, 39 *Cal.* 189; "the best return that the circumstances would admit" would be a proper return.

*Wright v. United States*, 302 *U. S.* 583, 58 *S. Ct.* 395, 82 *L. Ed.* 439; return to the Senate during a three-day recess may be made to the Secretary of the Senate.

There are four other state decisions holding that "adjournment" means "final adjournment" only. *Hequembourg v. City of Dunkirk*, 49 *Hun.* 550, 2 *N. Y. S.* 447; *Miller v. Hurford* (11 *Neb.* 377), 9 *N. W.* 477; *Opinion of the Justices*, 3 *Mass.* 567; *State ex rel. State Pharmaceutical Ass'n v. Michel*, 52 *La. Ann.* 936, 27 *So.* 565. None of the decisions considers what we think is the important question: How is a return to be made if the house is not in session?

The contrary view—that a return must be made to the house in session—is forcefully set forth in "The Pocket Veto

Case" (*Okanogan etc. v. United States*), 279 *U. S.* 655, 49 *S. Ct.* 463, 73 *L. Ed.* 894. The Supreme Court held that a return to an officer of the House would not be a constitutional return, because the House, not being in session, could not have received it, nor have entered the objections upon its journal, nor have proceeded to reconsider the bill. The Court also set forth the grave practical difficulties attending an attempted return during a protracted recess or adjournment. These are discussed hereafter.

Finally, the Court gave considerable weight to "the long-settled and established practice" of the Presidents through the years in construing the pocket veto provision to be applicable to interim adjournments.

To the same effect is *In re "An Act, etc. 'Concerning Public Utilities' "*, 83 *N. J. L.* 303, 84 *A.* 706, 710, in which the Court specifically rejected the suggestion that a return might be made by delivering the bill "to the secretary of state, or to some officer of the house of origin".

In answering the question propounded to us, we must choose between the two views above outlined. Which view is more persuasive, having regard to the provisions of our own Constitution and to the practice under it?

We are of opinion that the second view—that a temporary adjournment does prevent the return of a bill—is the more persuasive. Several considerations have impelled us to this opinion.

First, the quoted language of Section 18 of Article III of our Constitution clearly distinguishes between "adjournment" and "final adjournment". The implication is that in its first use its meaning is broader than in the second use. This distinction does not exist in the federal constitution, nor, so far as we can determine, in the constitutional provisions considered in any of the decisions from the ten states above re-

ferred to, except in the provisions of the New York Constitution. In the *City of Dunkirk* case above mentioned the New York Supreme Court held that the word "adjournment" meant "final adjournment". Since our Section 18 was based on the corresponding New York provision (1 *Constitutional Debates*, 1897, p. 235), it might be thought that the same construction should be given to our Constitution. But the New York holding is based on the fact that the "final adjournment" clause was added in 1874 and was not intended to change the meaning of the original provision. Our Section 18 was adopted as a whole. We think the New York case inapposite.

Second, our only judicial precedent supports, by way of dictum, the view we have chosen. *State v. Homiak*, 6 *W. W. Harr.* 188, 36 *Del.* 188, 172 *A.* 838. The facts were that a bill had been presented to the Governor on April 4, 1933, and the General Assembly was not in session on the tenth day thereafter, that being a Saturday. The Governor did not return the bill and did not act upon it until after the adjournment of the legislature on May 16. On June 5 he signed the bill. It was argued for the defendant that the attempted approval was invalid, and that his power to sign the bill expired on the tenth day. This contention was rejected, the court naturally applying the thirty-day clause of the section. The case is not directly in point, but the following argument of the defendant and the answer of the court are worth noting:

"It is true, as argued, that when the Governor fails to return a bill to the House in which it originated within the ten-day period, the Legislature may not know what disposition he proposes to make of the bill until the expiration of thirty days after its final adjournment. The Legislature has in its power, however, to learn whether the Governor disapproves of a bill which has been presented to him by remaining in ses-

sion during the entire ten-day period after the date upon which it was presented to him."[1]

Third, there is some evidence of a practical construction of Section 18 in the past supporting our view. This is an important consideration in resolving a question involving the relationship of two branches of government. Practical construction was relied on in the *Pocket Veto* case, *supra*, as supporting the view that adjournment in the federal constitution is not limited to "final adjournment"; and it was likewise given great weight in three of the state decisions upholding the contrary view. See the Wisconsin, Michigan, and Minnesota cases, heretofore cited.

The evidence of practical construction in Delaware is meager, but it is suggestive.

(a) Toward the end of the 1923 session, the General Assembly adjourned on March 28, 1923 until April 10, 1923— eleven calendar days excluding Sundays. See *House Journal*, 1923, p. 555, and *Senate Journal*, p. 516.

From accounts in the public press concerning the adjournment, it appears that the legislature, at odds with the Governor, had passed certain legislation which it had expected the Governor to veto. The Governor took the position that the adjournment of the General Assembly had prevented the return of the legislation, and that the "pocket veto" provision applied. When the legislature reconvened, the Governor advised both houses that he had nothing to submit to them. See the issues of the *Wilmington Every Evening* of the following dates: March 28, April 10, 11 and 14, May 1, 9, 11, 12 and 14. See also *House Journal*, p. 608 and *Senate Journal*, p. 559.

---

[1] Of course it would be sufficient for this purpose for the legislature to be in session on the tenth day.

Although the legal position was questioned, the Governor's decision prevailed.

(b) It appears also, from the data submitted with your letter of October 10, 1961, that in the 119th General Assembly House Bill 531 was delivered to the Governor on May 15, 1958. On the tenth day thereafter, excluding Sundays, the General Assembly was not in session, having adjourned on April 2, 1958, to reconvene at the call of the Chair.

The Governor, evidently disapproving the bill, never signed it. He made no attempt to return it to the House. The bill was never published as a law, and the Governor's action does not appear to have been questioned.

(c) Finally, we have been advised by you that your policy, during the entire time when you have been Governor, and the policy of other Governors of recent years, as far as you have been able to determine, has been to return vetoed bills to the Presiding Officer of the house of origin while that house is in session. The method of return, you advise us, has been as follows:

"The delivery has been made by special messenger who knocks at the door of the particular House and announces that he has a message from the Governor. The Presiding Officer of the House then announces that the House will receive a message from the Governor, admits the messenger of the Governor and receives the vetoed bill and the veto message of the Governor. This special messenger has, at least in the last thirteen years, been either the Secretary of State, the Secretary of the Governor, or the Administrative Assistant to the Governor."

This, you state, is the only method, as far as you know, that has been used to return bills to the General Assembly.

It seems a fair conclusion that the practical construction of the "pocket veto" provisions of our Constitution supports

the view that the return of a vetoed bill must be a return to the house in session.

On principle, also, there is certainly much to be said for this view. Delivery to an officer of the house involves not only a serious constitutional question, but, as a practical matter, presents serious difficulties. These are forcefully set forth in Justice Sanford's opinion in the *Pocket Veto Case* as follows: [279 *U. S.* 655, 49 *S. Ct.* 468]:

"Manifestly it was not intended that, instead of returning the bill to the House itself, as required by the constitutional provision, the President should be authorized to deliver it, during an adjournment of the House, to some individual officer or agent not authorized to make any legislative record of its delivery, who should hold it in his own hands for days, weeks or perhaps months,—not only leaving open possible questions as to the date on which it had been delivered to him, or whether it had in fact been delivered to him at all, but keeping the bill in the meantime in a state of suspended animation until the House resumes its sittings, with no certain knowledge on the part of the public as to whether it had or had not been seasonably delivered, and necessarily causing delay in its reconsideration which the Constitution evidently intended to avoid."

It is true that the later Supreme Court decision in the *Wright* case appears to overrule certain of the holdings in the *Pocket Veto* case; but the Court in the *Wright* case, which involved only a three-day adjournment, expressly disclaimed any attempt to lay down a rule applicable to a protracted adjournment.

In any event, we think the objections noted in the *Pocket Veto* case are applicable with especial force to our own situation. So far as we know, the General Assembly, unlike Con-

gress[2], does not maintain a secretariat at the legislative hall during the entire time from the opening of the session until final adjournment. And if no officer of the house of origin is in the legislative hall, the Govenor would be obliged to deliver his message to some officer at the officer's home or place of business—a highly incongruous method of proceeding.

Again, when it is said that a return may be made to an officer of the originating house, the question arises: What officer? And who determines who is the proper officer?

The vagueness of the holdings in the reported cases authorizing delivery to an agent suggests the weakness in this procedure. As we have shown, it has even been said that the veto message may be delivered to any member of the house. *State v. Holm, supra.* Surely it is no part of the official duties of a member, as such, to receive veto messages from the Governor, make a record thereof, and present the record to the house on its reconvening. Where in the Constitution is any such procedure contemplated?

Again, suppose that, as happened in 1958, the houses recess to reconvene at the call of the presiding officers, but in fact never reconvene, and the Assembly expires. Suppose that after the recess the Governor has delivered a veto message to the Speaker of the House, who is not reelected. What becomes of the veto message? How is it entered on the journal?

It may be said that a requirement that the return be made to the house in session tends to impair the right of the General Assembly to repass a bill over a veto, because, as in the Homiak case, the General Assembly is not usually in

---

[2]"The Houses of Congress have officers and agents of great power and responsibility who act in their stead, and who are constantly in their places when the Houses are in session, and when they are not in session." Per Mr. Hatton Summers, *amicus curiae,* in the Pocket Veto case, quoted in *Wright v. United States,* 302 *U. S.* 583, 58 *S. Ct.* 395, 398, 82 *L. Ed.* 439.

session on Saturdays. The answer is, as we have heretofore said, that the house can elect to be in session on the tenth day after delivery of the bill. To which we may add: And the General Assembly can also control the date when the bill is presented to the Governor.

Upon examination of the decided cases, and in the light of all of the considerations above set forth, we are of opinion that a temporary or interim adjournment of the originating house prevents the return by the Governor of a disapproved bill, within the meaning of the Constitution.

It follows from the foregoing that the seven bills listed in the chart annexed to your letter have not become law. It would not be correct to say that they have been "pocket vetoed", because under the thirty-day clause of Section 18 the Governor may sign such bills within thirty days after final adjournment of the General Assembly. *State v. Homiak, supra.*

As to House Bill 531 of the 119th General Assembly, heretofore mentioned, it is clear that it did not become law and cannot become law because the former Governor never signed it.

The foregoing opinion, which is the opinion of all the members of the Court, answers the first question in your letter of September 19, 1961, above referred to.

The answers to the other questions, involving the construction of the recent amendment to Article II, Section 4 of the Constitution, will be the subject of a separate opinion.

Respectfully submitted,

CLARENCE A. SOUTHERLAND
Chief Justice

DANIEL F. WOLCOTT
Justice

WILLIAM DUFFY, JR.
Judge.

## TABLE

| Bill No. | Date Delivered to Governor | 10th Day | Adjournment or Resolution No. | Adjourned From | To |
|---|---|---|---|---|---|
| HB 127 | April 4, 1961 | April 15, 1961 | Senate "On motion of Mr. Steen the Senate adjourned at 6 p. m., until Monday, April 17, 1961." House "Mr. Eskridge moved the House adjourn until April 17 at 1 p. m." | April 13 | April 17, 1961 |
| SB 132 | May 17, 1961 | May 29, 1961 | SCR 20 | May 18 | June 5, 1961 |
| HB 216 | May 18, 1961 | May 30, 1961 | SCR 20 | May 18 | June 5, 1961 |
| SB 136 | June 13, 1961 | June 24, 1961 | Senate "On motion of Mr. Steen the Senate adjourned at 1:45 a. m. on June 23, 1961 until Monday, June 26, 1961." House "On motion of Mr. Shockley the House adjourned until Monday, June 26 at 1 p. m." | June 23 | June 26, 1961 |
| SB 114 | June 21, 1961 | July 3, 1961 | HCR 27 Senate "On motion of Mr. Steen the Senate recessed at the call of the President Pro Tempore." | June 29 | July 10, 1961 |
| HB 132 HB 347 | Sept. 22, 1961 | | House "On motion of Mr. Eskridge the House recessed at the call of the Speaker of the House," | Sept. 19, 1961 | Have not reconvened as of present date, Oct. 9, 1961. |

| Bill No. | Date Delivered to Governor | 10th Day | Adjournment or Resolution No. | Adjourned From | To |
|---|---|---|---|---|---|
| HB 531 (119th General Assembly) | May 15, 1958 | May 27, 1958 | (Senate, April 2, 1958)<br>"At 11:29 p. m. therefore, the President Pro Tempore of the Senate, without objections, declared the Senate recessed until the call of the Chair."<br><br>(Senate, June 17, 1958)<br>"At 12:08 a. m. Tuesday, June 17, 1958, Mr. Reilly moved that the Senate recess at the call of the Chair. His motion prevailed."<br><br>(House, April 2, 1958)<br>"On motion by Mr. Quigley, the House recessed at the call of the Chair at 10:30 p. m."<br><br>(House, June 16, 1958)<br>"On motion of Mr. Quigley, the House recessed at the call of the Chair at 11:10 p. m." | April 2, 1958<br><br>June 16 & 17, 1958 and never reconvened. | June 16, 1958 |

Note: The above information is found in the House Journal on pages 590 and 596 and in the Senate Journal on pages 695 and 701. Both House and Senate Journals dated 1957.