Paul J. BORDALLO, Plaintiff,

v.

Carlos G. CAMACHO, Defendant.

Civ. No. 146–73.

District Court of Guam.

Dec. 13, 1973.

Howard G. Trapp (Trapp, Gayle, Teker, Hammer & Lacy), Agana, Guam, for plaintiff.

Charles H. Troutman, III, Atty. Gen., Agana, Guam, for defendant.

## MEMORANDUM OPINION

DUENAS, District Judge.

This matter was heard by the Court on October 26, 1973 on plaintiff's motion for summary judgment submitted on October 3, and defendant's motion for summary judg-

ment submitted on October 11. Presented to the Court for its determination is the basic question of Guam's Governor's veto power under 48 U.S.C. Section 1423i, more specifically directed to that portion commonly known as the Pocket Veto.

Plaintiff seeks a judgment declaring that Bill No. 302, passed by the Guam Legislature validly became law without the signature of the Governor in accordance with 48 U.S.C. Section 1423i. Plaintiff also seeks as part of the judgment the issuance of a writ of mandate to compel the Governor to report Bill No. 302, as a law duly enacted by the Legislature to the Secretary of the Interior pursuant to the provisions of 48 U.S.C. Section 1423i.

The following are the undisputed material facts:

(1) The plaintiff is a resident, citizen, elector and taxpayer of Guam, a Senator of the Twelfth Guam Legislature, and Chairman of the Committee on Resources, Development, and Agriculture of said legislature, and principal sponsor of Bill No. 302.

(2) The defendant is the Governor of Guam.

(3) Bill No. 302 was passed by the Guam Legislature and entered in the Legislature's journal on July 10, 1973. On July 26, 1973 the said bill was presented by the Legislature to the Governor. Bill No. 302, seeks to amend and repeal certain sections as well as add new sections to the Government Code of Guam, all relating to the Guam Development Authority. The bill also seeks to redefine and redirect the activities of the said Authority, and to emphasize assistance to Guamanian residents, either native-born or of Chamorro ancestry, or U.S. citizens who have domiciled in Guam for at least five (5) years, among other things.

(4) The plaintiff was among the Senators voting in favor of the bill.

(5) The Legislature adjourned for a recess on July 16, 1973 until August 27, 1973. The Legislative Journal for July 16, 1973 reads:

Senator R. F. Taitano moved that the Legislature recess until Monday, August

27, 1973, at 3:30 p. m., unless sooner called by the Speaker. Without objection the motion was carried, whereupon the Chair declared the Legislature in recess at 8:20 p. m., until Monday, August 27, 1973, at 3:30 p. m., unless sooner called for by the Speaker.

(6) Bill No. 302 was delivered to the Governor on July 26, 1973. The Governor has never signed the bill nor did he at any time returned said bill with his objections to the Legislature. On August 7, 1973 the Governor transmitted to the Legislature a written communication informing the Legislature that he was neither signing the Bill nor returning it to the Legislature; that he was availing himself of the "pocket veto" provision of the Organic Act of Guam; that the deadline for submitting the bill to the Legislature unsigned is August 7, 1973; that the Legislature, not being in session of August 7th, was unable to enter his objections upon its journal and unable to reconsider the bill upon a motion of a member should he [the Governor] return the bill at that time.

(7) Under the provisions of 48 U.S.C. Section 1423i, the Governor is required to report to the Secretary of the Interior all laws enacted by the Guam Legislature, and the Secretary of the Interior shall report the same to the Congress of the United States, which reserves the power and authority to annul the same.

The basic question before the Court relative to the merits of the case is whether the defendant's exercise of the pocket veto is valid; ergo, Bill No. 302 did not become law without the signature of the defendant. Among other things, the defendant contends that the plaintiff lacks the standing to maintain the action.

On the issue of plaintiff's standing (a) to maintain the action as it relates to the sought-for judgment declaring Bill No. 302 as a validly enacted law, defendant's contention is without merit. As to plaintiff's right (b) to maintain the action as it relates to mandamus, i. e., compelling the Governor to report to the Secretary of the Interior all laws enacted by the Guam Leg-

islature, defendant's contention is also without merit.

As to standing under (a), supra, plaintiff contends that Bill No. 302 did become law; defendant contends that he has "pocket vetoed" the bill, hence it is dead. There is definitely a controversy arising out of the conflicting claims of the parties.

In *Kennedy v. Sampson,* 364 F.Supp. 1075 [United States District Court for the District of Columbia] the Court held that Kennedy had been injured, in that he had been deprived of his vote and had been deprived of the right to override the allegedly unconstitutional Presidential veto in an effort to have the bill passed without the president's signature. If the defendant's [Governor's] pocket veto in the instant case is illegal then the plaintiff [Bordallo] has suffered a real injury, i. e., the loss of the effectiveness of his vote, and the loss of his opportunity to override the defendant's veto.

As to the standing under (b), supra, plaintiff has the standing to maintain action to compel the defendant to report to the Secretary of the Interior. Section 1423i of Title 48, U.S.C. provides, in part:

" . . . All laws enacted by the legislature shall be reported by the Governor to the head of the department or agency designated by the President under section 1421a of this title [Secretary of the Interior] and by him to the Congress of the United States, which reserves the power and authority to annul the same."

Section 1423i clearly provides the United States Congress with the power and authority to annul any law passed by the Guam Legislature. While it is true that this section does not serve to validate or authenticate Bill No. 302 as a properly enacted law, it could nevertheless be properly concluded that reporting of laws enacted by the Legislature to the Secretary of the Interior and ultimately to the Congress of the United States would serve the best interest of the people of Guam, Senators and other citizens alike. Submission of Guam enacted laws to the Congress would make more certain the

status of such enacted laws through Congressional action or inaction. Action of nullification leads to virtual non-reliance of such affected laws; acquiescence, especially of a long duration, lends added credibility to their validity.

■ The defendant's duty to report to the Secretary of the Interior under the provisions of 48 U.S.C. Section 1423i is a non-discretionary ministerial duty, a duty whose performance could properly be mandated by the court.

## ON THE MERITS

■ Was the recess of the Guam Legislature on July 16, 1973, an "adjournment" under 48 U.S.C. Section 1423i which prevented the defendant from returning Bill No. 302 to the Legislature with his objections thus allowing the defendant to pocket veto the bill, or was the recess period from July 16, 1973 to August 27, 1973 such an "adjournment" which did not prevent the defendant from returning the bill to the Legislature. If the defendant was not thus prevented, then he was required to either sign the bill, let it become law without his signature or return it to the Legislature with his objections.

There have been only three cases involving the pocket veto provisions of the U.S. Constitution: *Pocket Veto Cases,* 279 U.S. 655, 49 S.Ct. 463, 73 L.Ed. 894 (1929), *Wright v. United States,* 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938), and *Kennedy v. Sampson,* 364 F.Supp. 1075, USDC for the District of Columbia (1973). In both the Constitution and the Organic Act, the Executive must return the bill with his objections to the legislative body and those objections must be entered in the appropriate Journal. The legislative body shall then proceed to reconsider the bill.

"Every Bill which shall have passed the (House of Representative and the Senate) shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to (that House in which it shall have originated), who shall enter the Objections at large on their Journal, and proceed to reconsider it. . . . If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law."

(United States Constitution, Art. I, Sec. 7, Cl. 2)

"Every bill passed by the legislature shall, before it becomes a law, be entered upon the journal and presented to the Governor. If he approves it, he shall sign it, but if not he shall, except as hereinafter provided, return it, with his objections, to the legislature within ten days (Sundays excepted) after it shall have been presented to him. If he does not return it within such period, it shall be a law in like manner as if he had signed it, unless the legislature by adjournment prevents its return, in which case it shall be a law if signed by the Governor within thirty days after it shall have been presented to him; otherwise it shall not be a law. When a bill is returned by the Governor to the legislature with his objections, the legislature shall enter his objections at large on its journal and, upon motion of a member of the legislature, proceed to reconsider the bill. If, after such reconsideration, two-thirds of all the members of the legislature pass the bill, it shall be a law."

(Organic Act of Guam, Section 19 (48 U.S.C.A. 1423i).

The *Pocket Veto Case* involved the adjournment of the First Session of Congress for a period of five months until the next session of Congress was to convene. The court found that this interim adjournment was sufficient to allow a pocket veto since it effectively prevented the President from returning the bill with his objections to the House of Congress in which it originated on the last day within which the President had to return it.

On the issue of the meaning of the term "adjournment" the court stated,

On the contrary, the fact that the word "adjournment" as used in the Constitution is not limited to a final adjournment, is shown by the first clause in section 5 of Article I, which provides that a smaller number than a majority of each House may "adjourn" from day to day, and by the fourth clause of the same Article, which provides that neither House, during the session of Congress shall, without the consent of the other, "adjourn" for more than three days.

*Pocket Veto Case*, 279 U.S. p. 680, 49 S.Ct. at p. 467.

The United States Supreme Court stated that the issue was as follows,

We think that under the constitutional provision the determinative question in reference to an "adjournment" is not whether it is a final adjournment of Congress or an interim adjournment, such as an adjournment of the first session, but whether it is one that "prevents" the President from returning the bill to the House in which it originated within the time allowed. *Pocket Veto Case*, p. 680, 49 S.Ct. p. 467.

The Court stressed certain dangers which would occur if the President were required to return the vetoed bill to an adjourned Congress,

We find no substantial basis for the suggestion that although the House in which the bill originated is not in session the bill may nevertheless be returned, consistently with the constitutional mandate, by delivering it, with the President's objections, to an officer or agent of the House, for subsequent delivery to the House, for subsequent delivery to the House when it resumes its sittings at the next session, with the same force and effect as if the bill had been returned to the House on the day when it was delivered to such officer or agent. Aside from the fact that Congress has never enacted any statute authorizing any officer or agent of either House to receive for it bills returned by the President during its adjournment, and that there is no rule to that effect in either House, the delivery of the bill to such officer or agent, even if authorized by Congress itself, would not comply with the constitutional mandate. The House, not having been in session when the bill was delivered to the officer or agent, could neither have received the bill and objections at that time, nor have entered the objections upon its journal, nor have proceeded to reconsider the bill, as the Constitution requires; and there is nothing in the Constitution which authorizes either House to make a nunc pro tunc record of the return of a bill as of a date on which it had not, in fact, been returned. Manifestly it was not intended that, instead of returning the bill to the House itself, as required by the constitutional provision, the President should be authorized to deliver it, during an adjournment of the House, to some individual officer or agent not authorized to make any legislative record of its delivery, who should hold it in his own hands for days, weeks or perhaps months,—not only leaving open possible questions as to the date on which it had been delivered to him, or whether it had in fact been delivered to him at all, but keeping the bill in the meantime in a state of suspended animation until the House resumes its sittings, with no certain knowledge on the part of the public as to whether it had or had not been seasonably delivered, and necessarily causing delay in its reconsideration which the Constitution evidently intended to avoid. In short, it was plainly the object of the constitutional provision that there should be a timely return of the bill, which should not only be a matter of official record definitely shown by the journal of the House itself, giving public, certain and prompt knowledge as to the status of the bill, but should enable Congress to proceed immediately with its reconsideration; and that the return of the bill should be an actual and public return to the House itself, and not a fictitious return by a delivery of the bill to some individual which could be given a retroactive effect at a later date when the time for the return of the bill

to the House had expired. *Pocket Veto Case*, pp. 683–85, 49 S.Ct. p. 468.

As further evidence for their position the court pointed out that in 1868 a bill had been introduced in the Senate and passed by the Senate which declared that the return of a bill is prevented by the "final adjournment of a session" of Congress, although not by an adjournment to a particular day. The bill provided that a return would be made to the Secretary of the Senate or to the Clerk of the House during these interim adjournments. However, the House never reported the bill out of committee.

Especially significant in the Court's eyes was the fact that there had been over 400 bills and resolutions which were not signed by the President less than ten days before a final or interim adjournment of Congress, which weren't signed by the President nor returned with his disapproval. Of these, 119 were instances in which the adjournment was that at the end of a session of Congress, as distinguished from the final adjournment of the Congress. None of these bills or resolutions were placed upon the statute books or treated as having become a law; nor does it appear that there was any attempt to enforce them in the courts until the present suit was brought.

The plaintiff in this case has raised the point that in the past the defendant has returned bills to the Legislature with his objections when the Legislature has been adjourned temporarily. Therefore, the plaintiff argues that this is proof that the Governor is not prevented from returning a bill during an interim adjournment. The only occasions in which the Legislature would have had an interim adjournment would arise since September 1968 when the Organic Act was amended to allow a continuous annual session of the Legislature. Senator Taitano stated in his deposition that during the course of the 12th Guam Legislature the Governor vetoed and returned 11 bills while the Legislature was in recess. He was able to state the numbers of 8 of those bills. One of the bills, Bill No. 255, was returned during the July 16–August 27, recess. It is unclear as to the length of the other recesses in which the bills were returned.

Simply because the Governor has returned bills during recesses doesn't prove that he is not prevented from returning bills by a recess. The *Pocket Veto Case* is concerned with the Constitutional interpretation and not the physical facts of the matter. However it is important that the Governor act consistently.

In *Wright v. U. S.* the President was presented with a bill on April 24. The Senate recessed from May 4 until May 7. The President returned the bill with his objections to the Senate on May 5. The bill was open to reconsideration but did not become law. Plaintiff brought suit to enforce the law that the bill would have created claiming that the veto of the President was ineffective because he was technically prevented from returning the bill due to the Senate's recess,

The Court held that the veto was valid because the President is prevented from returning a bill by adjournment of Congress. The Constitution clearly states "adjournment of Congress". In this case there was not adjournment of Congress and could not have been as long as the House of Representatives was still in session. The court held that for an adjournment to exist both Houses must be out of session. Authority for such holding is properly provided by Paragraph 4 of Section 5 of Article I of the Constitution:

Neither House, during the Session of Congress, shall, without the Consent of the other, adjourn for more than three days, nor to any other Place than that in which the two Houses shall be sitting.

The Court's reasoning was that if the Constitution gave each House of Congress the right to take a three day recess, then saying that such recess would prevent the return of bills would nullify the right to take such a recess.

The Court stated that there is nothing wrong with the constructive delivery of bills to the Clerk of the Senate during a three day recess since Congress isn't ad-

journed. The Court pointed out that the Senate delivers its bills to the United States President at the White House through an agent when the President is elsewhere. The Court stressed the importance of speed and efficiency with regard to the delivery and return of bills.

The Court also noted that the dangers which existed in the *Pocket Veto Case* were not present in *Wright*;

No withholding of the bill from appropriate legislative record for weeks or perhaps months, no keeping of the bill in a state of suspended animation with no certain knowledge on the part of the public whether it was seasonably delivered, no causing of any undue delay in its reconsideration. 302 U.S. p. 595, 58 S.Ct. p. 400.

The Court noted that the purposes of the Presidential Veto are (1) that the President shall have suitable opportunity to consider the bills presented to him and (2) that the Congress shall have suitable opportunity to consider his objections to bills and on such consideration to pass them over his veto provided there are the requisite votes. The Court found that such purposes were satisfied in this case.

The Court specified that the holding in the case was based solely on the particular facts involved and would not be applicable to instances other than where Congress had not adjourned but where one house had recessed for three (3) days.

In *Kennedy v. Sampson* the plaintiff was requesting declaratory relief declaring an Act a law and an order in the nature of mandamus or a permanent injunction requiring the defendants to publish the bill as a validly enacted law. The case came before the court on counter motion for summary judgment.

The facts of the case were as follows:

The Senate presented the President with a bill on December 14. On December 22, the Senate voted to adjourn until December 28, two days after the President was required to send the bill back, excluding Sundays. The House also adjourned from December 22 to December 29. The Court held that this interim adjournment did not prevent the President from sending the bill back to the Senate. The Senate had specifically authorized its Secretary to receive messages from the President. The Court noted that the dangers present in the Pocket Veto Case were not present here. Two fundamental purposes had been fulfilled: 1) the President had sufficient time to consider the bill, and 2) Congress had time to consider the President's objections to the bill. The plaintiff asked Judge Waddy to hold that the Pocket Veto Clause is applicable only to *sine die* adjournments and not to any adjournments within a session. Judge Waddy refused to go any further than it had to. This decision is specifically limited to its facts where the adjournment continued for only two days beyond which the President had to return the Bill to the Senate.

In 40 Op.Atty.Gen., July 16, 1943, the Attorney General of the United States advised the President that his failure to return bills which were presented to him before and after the adjournment of Congress from July 8, 1943 to September 14, 1943 resulted in their being pocket vetoed and not becoming law. There are numerous state cases dealing with the issue of when a Governor is prevented by the State legislature's adjournment from returning a bill. Most of these decisions hold that a temporary adjournment does not prevent a return. However, most of these cases are very old and were decided before the Pocket Veto Case. Moreover, most are based on Constitutional provisions which are unlike those of Section 7, Clause 2, of Article 1.

In 1961, the Governor of Delaware requested the Delaware Supreme Court for an advisory opinion with regard to the effect of an adjournment. In *Opinion of the Justice*, Del., 175 A.2d 405 (1961) the Court was presented with a situation in which seven bills were passed by both Houses of the General Assembly and were duly delivered to the Governor. However, the tenth calendar day after each delivery, Sundays excepted, fell upon a day on which both

Houses of the General Assembly were in recess. Four of the recesses involved were from 3 to 18 days and one recess was still in effect when the opinion was requested.

The Court relied upon the Pocket Veto Case and held that a temporary adjournment prevented the return of a bill. The Court noted numerous dangers involved if the Governor were required to return a bill to an agent of the Assembly when the Assembly is in a temporary recess. Older state cases had upheld the policy of such a return. However, in the instant case, the Court is not presented with the situation where the Legislature authorized an agent to receive message from the Governor. The Court also noted that it is the Assembly which controls when it is in session and when a bill is delivered to the Governor.

All the dangers noted by the Court in the *Pocket Veto Case* are present here. The public and the Legislature may not have knowledge of whether a bill had been returned or not. The purpose of the veto is to allow the legislators to quickly reconsider the Bill and provide them with an opportunity to override the veto. However, the Bill is not supposed to languish in suspended animation until the Legislature reconvenes.

■ The plaintiff in this case has stressed the point that the Speaker of the Legislature can call the Legislature back into session to reconsider a returned Bill. However, that position assumes two things. One, that the Speaker wants the Bill reconsidered and chooses to reconvene the Legislature and, two that the necessary quorum is available. Such a method of return is not contemplated by 48 U.S.C., § 1423i. The Governor is prevented from returning a Bill to the Legislature when he cannot return it to the Legislature in session.

■ On the issue of the Constitutionality of Bill No. 302, plaintiff's position is well taken. Even if the bill were duly enacted into law, and even if such would violate 48 U.S.C. 1421b(n) in that it discriminates on the basis of race and national origin; nevertheless the Constitutionality of a statute could be challenged by one whose rights have been injured by that statute. In this case, it is not the Governor whose rights are adversely affected. Section 119 of 16 Am. Jur.2d states with regard to the issue:

"It is always open to interested persons to show that the legislature has transgressed the limits of its power, and persons injuriously affected may question the validity of a law. But the requirements of interest and injury are important ones. A constitutional question does not arise merely because it is raised and decision thereof sought. The constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby. Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he had an interest in the question in that the enforcement of the law would be an infringement on his rights. Assailants must therefore show the applicability of the statute and that they are thereby injuriously affected. These rules are applicable to all cases both at law and in equity, to attacks on ordinances, and to criminal proceedings. The general principle applies even in those jurisdictions where an agreed case may be submitted to the court because of a special enactment providing for such procedure. When this is done and a legislative act is therein attacked as being unconstitutional, the court will determine whether or not the legislative act involved is constitutional as to the persons shown by the agreed case to be affected by the legislative act is constitutional as to the persons shown by the agreed case to be affected by the legislative act and will refuse to determine whether or not the legislative act is constitutional as to persons who are not shown by the agreed case to be affected.

The corollary to the general rule is that one who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality. Absent a showing of injury, actual or threatened, there can be no constitutional argument. . . . ."

The Court, based upon the foregoing, concluded that there is no genuine issue of a material fact and that defendant is entitled to judgment as a matter of law.