**[J-29-2017][M.O. – Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

JOSEPH B. SCARNATI, SENATOR AND PRESIDENT PRO TEMPORE OF THE SENATE OF PENNSYLVANIA; JAKE CORMAN, SENATOR AND MAJORITY LEADER OF THE SENATE OF PENNSYLVANIA; JAY COSTA, SENATOR AND MINORITY LEADER OF THE SENATE OF PENNSYLVANIA,

Appellant

v.

TOM WOLF, GOVERNOR OF PENNSYLVANIA; RANDY ALBRIGHT, SECRETARY OF THE BUDGET; TIMOTHY A. REESE, STATE TREASURER OF PENNSYLVANIA; DENNIS M. DAVIN, SECRETARY OF COMMUNITY AND ECONOMIC DEVELOPMENT; CINDY ADAMS DUNN, SECRETARY OF CONSERVATION AND NATURAL RESOURCES; JOHN H. QUIGLEY, SECRETARY OF ENVIRONMENTAL PROTECTION; CURTIS M. TOPPER, SECRETARY OF GENERAL SERVICES; KATHY MANDERINO, SECRETARY OF LABOR & INDUSTRY; MAJOR GENERAL JAMES R. JOSEPH, ADJUTANT GENERAL OF PENNSYLVANIA; JOSH SHAPIRO, CHAIRMAN OF THE PENNSYLVANIA COMMISSION ON CRIME AND DELINQUENCY,

Appellee

:   No. 3 MAP 2016
:
:
:   Appeal from the Order of the
:   Commonwealth Court at No. 579 MD
:   2014, dated 12/30/15 (finalized on
:   1/29/16)
:
:
:
:
:
:
:   ARGUED:  May 9, 2017
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

## CONCURRING OPINION

**CHIEF JUSTICE SAYLOR**                          **DECIDED: November 22, 2017**

I agree with the majority that the governor's veto attempt failed. I also join the majority opinion except for its conclusion that both chambers of the General Assembly must be adjourned to prevent return of a bill to the originating house, thereby triggering the file-and-proclaim procedure.

Sound logic dictates that it is only the adjournment of the originating chamber that can prevent the Governor from returning the bill to that chamber. *Accord In re 'An Act to Amend an Act Entitled 'An Act Concerning Pub. Utils.''*, 84 A. 706, 710 (N.J. 1912) (noting that "it is the adjournment of the house of origin alone, and not of both branches of the Legislature, which prevents executive action"); *see also* Brief for Appellants at 20 ("[W]hat does it matter if the other House has lingered in session? The Constitution does not permit the vetoed bills to be returned to that other House, because the bills did not originate there."). For this reason – and as the majority acknowledges, *see* Majority Opinion, *slip op.* at 19 – courts in some other states with similar constitutional provisions have understood the term "General Assembly" or "Legislature" in this context to refer to the originating house. *See Opinion of the Justices*, 175 A.2d 405, 406 (Del. 1961) ("Of course, when the Constitution speaks of an adjournment by 'the General Assembly', it necessarily means an adjournment of the originating house."); *In re 'An Act to Amend an Act Entitled 'An Act Concerning Pub. Utils.''*, 84 A. at 710 (indicating that "the necessary inference is that the words 'the Legislature' are used in this connection as synonymous with 'the house of origin'").

Although reading the text this way is problematic in the sense that it is in tension with the ordinary meaning of "General Assembly," requiring both chambers to be adjourned is equally problematic. As the House Republican and Democratic Caucuses

point out, a literal reading of Section 15 would lead to a conundrum: if the originating house has adjourned but the other house has not, the Governor (a) cannot return the bill to the originating house, and (b) cannot use the file-and-proclaim procedure since there has been no adjournment of the General Assembly as a whole. *See* Brief for *Amici* Republican & Democratic Caucuses of the Pennsylvania House of Representatives at 14 (referring to this situation as a "Catch 22").[1]

The majority's interpretation could therefore completely preclude an executive veto of a particular bill. This, in turn, would undermine the checks and balances inherent in our tripartite government as set forth in the state charter. To my mind, it seems implausible that the framers of Sections 15 and 16, and the electorate which approved them, intended such a result. *See generally Commonwealth v. Novak*, 395 Pa. 199, 214, 150 A.2d 102, 109-10 (1959) (suggesting that constitutional provisions should not be interpreted to lead to impractical or unreasonable results); *Jubelirer v. Pa. Dep't of State*, 859 A.2d 874, 877 n.2 (Pa. Cmwlth. 2004) (*en banc*) (emphasizing that the Pennsylvania Constitution should be interpreted "to ensure that its checks and balances will continue into the future").

---

[1] Appellants observe that the Senate may consent to the adjournment of the House while the Senate stays in session, and *vice versa*. *See* Brief for Appellants at 19 n.3.

To the extent the majority opinion may be read to suggest that such an adjournment would in fact be a "temporary recess," *see* Majority Opinion, *slip op.* at 21, the Constitution clearly contemplates that one chamber can adjourn for longer than three days so long as it obtains the consent of the other. *See* PA. CONST. art. II, §14 ("Neither House shall, without the consent of the other, adjourn for more than three days . . ..."). Additionally, simply re-labeling a short adjournment as a "temporary recess" does not alleviate the underlying problem, as the governor may try to return the bill on the last day possible while the originating chamber is in temporary recess and the other chamber is in session. In that circumstance, the governor cannot return the bill to the originating house (since it is in recess), and he also cannot file-and-proclaim since his inability to return the bill is not due to the General Assembly's adjournment.

As a final observation, the majority emphasizes that in this case, both chambers were, in fact, adjourned on the day the governor attempted to return the bill to the House of Representatives. *See* Majority Opinion, *slip op.* at 2 n.3; *see also id.* at 22 (observing that "the General Assembly had, in fact, adjourned when the Governor sought to return the bills and his objections on July 10, 2014"). That being the case, it can reasonably be argued that we need not presently resolve the issue of whether the General Assembly as a whole, or only the originating House, must be adjourned to prevent a gubernatorial return for purposes of Article IV, Section 15. *Cf. In re Fiori*, 543 Pa. 592, 600, 673 A.2d 905, 909 (1996) (referring to the precept that "courts should avoid constitutional issues when the issue at hand may be decided upon other grounds"). Such a precept seems particularly salient here, since our interpretation – if it leads to practical difficulties in governance – cannot be legislatively amended. *See Hunt v. Pa. State Police*, 603 Pa. 156, 174, 983 A.2d 627, 638 (2009) (recognizing that the courts have the final word on matters of constitutional dimension, in contrast to the statutory arena in which the Legislature can "correct any errant interpretation of its intentions" (internal quotation marks, citation, and emphasis omitted)). [2]

---

[2] The majority describes this concern as "inapt" and emphasizes that it is presently "necessary to answer the question" of whether the General Assembly had adjourned on July 10, 2014, as such adjournment was required for invocation of the governor's file-and-proclaim procedure. Majority Opinion, *slip op.* at 37 n.17. While it is true that we must ascertain whether the General Assembly had adjourned for Section 15 purposes, our present disagreement arises because the majority concludes that, in the hypothetical case that the House of Representatives *alone* had adjourned, such condition would not have been satisfied. *See id.* at 20-21. My point is that, since it is undisputed that *both* chambers were not in session on the date in question, we need not address such a hypothetical scenario in order to conclude that the "General Assembly," as that term is used in the last sentence of Section 15, had indeed adjourned, thus implicating the file-and-proclaim process.

Accordingly, barring an interpretation along the lines of the above, I would, in the alternative, favor deferring any holding as to the meaning of the term "General Assembly" – as it appears in the last sentence of Article IV, Section 15 – to a future dispute in which its proper construction is material to the outcome.